# United States District Court

### Eastern District of Washington

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NOV 05 2018

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON    DEPUTY

B&B Investment Properties
Beatevre Counts, mgr

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

The United States of America
FAIRChild AFB;
EPA; Wa Dept of Ecology

_____

*(In the space above enter the full name(s) of the defendant(s).
If you cannot fit the names of all of the defendants in the
space provided, please write "see attached" in the space
above and attach an additional sheet of paper with the full list
of names. The names listed in the above caption must be
identical to those contained in Section I. Do not include
addresses here.)*

**2:18-cv-00347- SMJ**

Case No. _____

(To be filled out by Clerk's
Office only)

## COMPLAINT

Jury Demand?
☑ Yes
☐ No

---

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

If this is an employment discrimination claim or social security claim, please use a different form.

**Plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.**

## I.    PARTIES IN THIS COMPLAINT

**Plaintiff**

*List your name, address and telephone number. If you are presently in custody, include your identification number and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.*

Plaintiff:    Beatrice Counts
_____
Name (Last, First, MI)

1921 1st St #104
_____
Street Address

Cheney        WA        99004
_____
County, City        State        Zip Code

509 769-9290
_____
Telephone Number        E-mail Address (if available)

**Defendant(s)**

*List all defendants. You should state the full name of the defendants, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant can be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.*

Defendant 1:    United States  Fairchild AFB
_____
Name (Last, First)

1 E Bong St. Suite 228
_____
Street Address

Fairchild AFB WA        99011
_____
County, City        State        Zip Code

Defendant 2:    EPA
_____
Name (Last, First)

_____
Street Address

_____
County, City        State        Zip Code

**Defendant(s) Continued**

Defendant 3: _WAshington Dept. of Ecology_

Name (Last, First)

Street Address

County, City                    State                    Zip Code

Defendant 4:

Name (Last, First)

Street Address

County, City                    State                    Zip Code

## II.    BASIS FOR JURISDICTION

*Check the option that best describes the basis for jurisdiction in your case:*

☑ **U.S. Government Defendant:** United States or a federal official or agency is a defendant.

☐ **Diversity of Citizenship:** A matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000.

☐ **Federal Question:** Claim arises under the Constitution, laws, or treaties of the United States.

If you chose "Federal Question", state which of your federal constitutional or federal statutory rights have been violated.

III.   VENUE

*This court can hear cases arising out of the Eastern District of Washington.*

*Under 28 U.S.C § 1391, this is the right court to file your lawsuit if: (1) All defendants live in this state AND at least one of the defendants lives in this district; OR (2) A substantial part of the events you are suing about happened in this district; OR (3) A substantial part of the property that you are suing about is located in this district; OR (4) You are suing the U.S. government or a federal agency or official in their official capacities and you live in this district. Explain why this district court is the proper location to file your lawsuit.*

Venue is appropriate in this Court because:

Property was Contaminated
in Medical Lake WA 99022

IV.   STATEMENT OF CLAIM

Place(s) of
occurrence:        Medical Lake WA

Date(s) of occurrence:     2012 — today

*State here briefly the FACTS that support your case. Describe how each defendant was personally involved in the alleged wrongful actions.*

FACTS:       See Attached Complaint

What
happened to
you?

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Was anyone else involved?

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Who did
what?

## V.    INJURIES

*If you sustained injuries related to the events alleged above, describe them here.*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

## VI.    RELIEF

The relief I want the court to order is:

☑    Money damages in the amount of:  $ 5,000,000.00

☐    Other (explain):

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

## VII.    CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

_11/5/18_
Dated

_B Counts_
_B+B Investment Prop. LLC_
Plaintiff's Signature

_Counts, Beatrice_
Printed Name (Last, First, MI)

_4503 S. Craig Rd    Medical Lake    WA    99022_
Address                         City                    State    Zip Code

_____
Telephone Number

_____
E-mail Address (if available)

*List the same information for any additional plaintiffs named. Attach additional sheets of paper as necessary.*

1.
2.
3.
4.
5.
6.
7.
8.       UNITED STATES DISTRICT COURT
9.  FOR THE EASTERN DISTRICT OF WASHINGTON
10.
11.
12.  B&B INVESTMENT PROPERTIES, LLC,
13.  BEATRICE COUNTS
14.  Plaintiff,
15.  vs.
16.
17.  THE UNITED STATES of AMERICA DEPARTMENT of the AIR FORCE
     FAIRCHILD AFB, EPA, Washington Dept of Ecology
18.
19.  COMPLAINT WITH INDIVIDUAL CLAIMS
20.  AND DEMAND FOR JURY TRIAL -
21.
22.

## I. INTRODUCTION
### A. The Contamination of Airway Heights and Medical Lake

1.1 Fairchild Airforce Base ("Fairchild AFB") is located approximately 12 miles west of Spokane, Washington. It contains a fire training site, as well as several historical firefighting training sites.

1.2 The United States Air Force ("USAF") has conducted firefighting training exercises on Fairchild AFB from the 1970's to date.

1.3 As part of firefighting training exercises, Fairchild AFB, like many other U.S. military bases, has used Aqueous Film Forming Foam ("AFFF") and other materials containing perfluorooctanesulfonic acid ("PFOS") and related

fluorochemicals that can degrade to perfluorooctanoic acid ("PFOA") or PFOS.

32. 1.4 AFFF has been linked to the contamination of surface and groundwater

33. with PFOA, PFOS and other perfluorinated chemicals ("PFC's") throughout the country.

34. 1.5 The communities of Airway Heights and Medical Lake, Washington,

35. ("Communities") are nearby Fairchild AFB and have widespread contamination in their water supply as the result of AFFF used at

36. Fairchild AFB.

37. 1.6 Plaintiff receives their potable water from a private well located at 4503 s Craig Road, Medical Lake, near many on base contamination sites, as detailed in Exhibit A: Figure 1-2 FAIRCHILD AFB IRP SITE LOCATIONS disposal of AFFF at Fairchild AFB that contained PFOA and PFOS.

38. 1.10 In or around April 2017, Plaintiffs were first made aware that their drinking water was contaminated with PFC's, including PFOA and PFOS, at hazardous levels and to seek alternate drinking water supplies by Marc Connally.

39. map on page 23 of the Final 2nd FIVE YEAR REVIEW REPORT For Priority One and Two Sites Accepted by THE USAF on August 12th, 2008, evidencing 2 "Priority One" sites FT-1 and WW-1, and 4 Priority 2 sites FT-2, SW-7, SW-12, and IS-4 at very close proximity to plaintiff's land.

40. 1.7 PFOA and PFOS that originated and were released from Fairchild AFB

41. have contaminated numerous private and public wells relied upon by the

42. Communities.

43. 1.8 PFOA and PFOS has been detected in levels exceeding the current EPA

44. Health Advisory Limit of 70 parts per trillion (ppt) in both municipal and private wells that provide water to the Communities.

45. 1.9 Investigations have concluded that the basis for this widespread

46. contamination of the Communities' groundwater is decades of use, storage, and

47. 1.11 Several studies and assessments conducted by HydroGeoLogic, Inc.

48. ("HGL"), CH2M Hill ("CH2M"), the United States Air Force, the Environmental

49. Protection Agency's Office of Water ("EPAOW"), Amec Foster Wheeler ("AFW"),

50. and the Washington State Department of Ecology ("WSDE") all confirmed the

51. existence of widespread PFC contamination of the groundwater resources for the

52. Communities ("Areas of Investigation"). 1

53. 1.12 Prior investigations by the USAF and WSDE also concluded that

54. 1

55. *U.S. Air Force Engineering Center, Fairchild Air Force Base, Washington. Action Memorandum for a Time-Critical Removal Action Treatment of PFOS- and PFOA- Contaminated Water In Residential Wells Near Fairchild Air Force Base, Washington. Oct 2017.*

56. ~~CLASS ACTION~~ COMPLAINT WITH INDIVIDUAL CLAIMS AND DEMAND FOR JURY TRIAL - Case 2:18-cv-00117 ECF No. 1 filed 04/05/18 PageID.7 Page 7 of 97

57. decades of use, storage, and disposal of AFFF at Fairchild AFB caused the PFOA

58. and PFOS contamination of groundwater in the surrounding communities, including

59. contaminating the municipal water system and private wells serving Airway Heights

60. and Medical Lake. 2

61. 1.13 Defendants Fairchild AFB and US EPA Region 10, and the Washington Department of Ecology etal, knowing that AFFF containing PFOA and/or PFOS presented an unreasonable risk to human health and the environment and was inherently dangerous, failed to assure that in place remedies, as directed by Records of Decision (RODs) for Priority One and Two sites at Fairchild AFB remained "protective of human health and the environment", as evidenced in the letter to Marc Connally dated September 25th, 2008 from Daniel Opalski, Director of the office of Environmental Cleanup, US EPA Region 10, and cc'd to Chuck Hinds of the WA Dept. of Ecology, which documents 2 disturbing deficiencies in Fairchild AFB's compliance: 1) the Airforce failed to meet statutory duties as lead agency to meet its deadline in accordance with the CERCLA requirements for 5 year review,

adding "the EPA finds it unacceptable that this Report was submitted over two and a half years past the deadline in fact this is the only site in region 10 where a five-year review has missed the submittal deadline by such a large margin."

62.    2) "One of the reasons for the delay in completing this report had to do with a disagreement over whether or not there was a need to sample groundwater 4 / Clarett and n Nitro dimethyl lean and dma at Fairchild AFB extensive research and the findings are well-documented in chapter 7.2 of the report. EPA review the information and documentation provided by the Air Force and has agree that the Air Force is not required to sample these potential contaminants of concern however EPA reserves right as allowed under Federal facility agreement to sample the groundwater at Fairchild Air Force Base anytime in the future and analyze for perchlorate ndma or any other potential contamination of concern."

63.    1.14 Defendants also knew that PFOA and PFOS were highly soluble and mobile in water, highly likely to contaminate water supplies and other sensitive receptors, were persistent in the environment, and would bio-accumulate in humans causing serious health effects.

64.    1.15 The USAFB used products with knowledge that large quantities of AFFF, containing toxic PFC's, would be used in training exercises and in emergency situations at military bases, including Fairchild AFB, in such a manner that PFOA and PFOS would contaminate the air, soil, and groundwater.

65.    1.16 The Defendants marketed and sold their products with knowledge that large quantities of AFFF, containing toxic PFC's, would be stored in fire suppressant systems and tanks on USAF Bases, including Fairchild AFB, and that such systems and storage were used and maintained in such a manner that dangerous chemicals would be released into the air, soil, and groundwater.

66.    1.17 The Defendants failed in their duty to warn users, bystanders, and
67.    sensitive receptors of the inherently dangerous properties of AFFF, and/or the probability of contamination to the groundwater.

68.    1.18 The Plaintiff was exposed to drinking water contaminated with PFOA

69. and/or PFOS from the Areas of Investigation, had their property and soil
70. contaminated with PFOA and PFOS, and suffered bioaccumulation of PFOA
71. and PFOS in their bodies.
72. **B. Health Effects of PFOS and PFOA Exposure**
73. 1.19 Many parties have studied PFOA, also known as C8, including a
74. Science Panel formed out of a class action settlement arising from contamination
75. from DuPont's Washington Works located in Wood County, West Virginia.
76. 1.20 The C8 panel consisted of three epidemiologists specifically tasked
77. with determining whether there was a probable link between PFOA exposure and
78. human diseases. In 2012, the panel found probable links between PFOA and kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, pregnancy induced hypertension (including preeclampsia), and hypercholesterolemia.
79. 1.21 Health effects of PFOS are the same as PFOA.
80. 1.22 In the May 2015 "Madrid Statement on Poly- and Perfluoroalkyl
81. Substances (PFAS's)," scientists and other professionals from a variety of
82. disciplines, concerned about the production and release into the environment of
83. PFOA, called for greater regulation, restrictions, limits on the manufacture and
84. handling of any PFOA containing product, and to develop safe non-fluorinated
85. alternatives to these products to avoid long-term harm to human health and the
86. environment. 3
87. 1.23 The USEPA's Lifetime Health Advisory and Health Effects of 70 ppt,
88. set in May 2016, was an attempt to identify the concentration of PFOA and/or PFOS in drinking water at or below which health effects are not anticipated to occur over a lifetime of exposure.4
89. 1.24 Many states, however, have issued lower regulatory limits. For
90. example, Vermont has set a combined level of 20 ppt for PFOA and PFOS and New Jersey has set a maximum contaminant level (MCL) of 14 ppt for

PFOA.

91. 1.25 California has listed PFOA and PFOS to its Proposition 65 list as a

92. 3

93. Blum A, Balan SA, Scheringer M, Trier X, Goldenman G, Cousins IT, Diamond M, Fletcher T, Higgins C, Lindeman AE, Peaslee G, de Voogt P, Wang Z, Weber R. 2015. The Madrid statement on poly- and perfluoroalkyl substances (PFASs). Environ Health Perspect 123:A107– A111; http://dx.doi.org/10.1289/ehp.1509934.

94. 4

95.

96.

97. chemical known to cause reproductive toxicity under the Safe Drinking Water and

98. Toxic Enforcement Act of 1986.

99. 1.26 The United States Senate and House of Representatives passed the

100. National Defense Authorization Act in November, 2017, which included $42

101. Million to remediate PFC contamination from military bases, as well as devoting $7Million toward the Investing in Testing Act, which authorizes the Center for Disease Control and Prevention ("CDC") to conduct a study into the long-term health effects of PFOA and PFOS exposure.

102. 1.27 Washington currently follows the USEPA level of 70 ppt for combined

103. PFOA and PFOS levels.

**104. C. The Plaintiffs' Exposure and Damages**

105. 1.28 Plaintiffs have been injured as a result of receiving water with elevated levels of PFC's, including PFOA and PFOS.

106. 1.29 Plaintiffs and the Putative Class have suffered exposure, personal

107. injury, bioaccumulation of PFC's in their blood which causes known cancers and

108. diseases, property damage, and the diminution of property value as a result of the

109. PFC contamination caused by AFFF, of their private well water supply.

110. 1.30 As a result of years of consuming contaminated water, the Plaintiffs, as residents in the community of  Medical Lake, have been unknowingly

exposed for many years to PFC's at concentrations hazardous to their health through the ingestion and dermal absorption of PFOA and PFOS.

111. 1.31 The Plaintiffs' Property has been damaged as a result of the presence of PFC's in their homes, their soil, surrounding property, and potable water supply.

112. 1.32 Plaintiffs seek recovery from the Defendants for

113. injuries, damages, and losses suffered by the Plaintiffs as a direct and proximate result of exposure to and consumption of PFC contaminated water from their drinking water supplies, in an amount to be determined at trial, exclusive of interest, costs, and attorneys' fees.

**114. II. JURISDICTION AND VENUE**

115. 2.1 This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332

116. (a)(1) and (d)(2) in that this action seeks monetary relief in excess of $5,000,000.00, exclusive of interest, costs and attorney's fees.

117. 2.2 This Court has jurisdiction over Defendants pursuant to RCW §

118. 4.12.025.

119. 2.3 Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the

120. COMPLAINT WITH INDIVIDUAL CLAIMS AND DEMAND FOR JURY TRIAL -

121. events or omissions by Defendants giving rise to the claims asserted herein occurred in the Eastern District of Washington and caused harm to Plaintiffs and whom reside in this District.

**122. III. THE PARTIES**

**123. A. Plaintiffs**

124. 3.1 Plaintiff B&B Investmet Properties, llc owns the subject property, and Beatrice Counts, managing member of B&B Investment properties is a resident of Medical Lake, Washington, who has primarily resided at 4503 S. Craig Rd, Medical Lake, WA. 99002 from 2012 to 2017. The property received its water from a private well. PFC's entered the property, through groundwater contamination of the existing well, resulting in the accumulation of PFC's in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn.

125. 3.2 Plaintiff Counts has been exposed to extremely elevated levels of PFC's

as indicated by well samples examined by USAF personnel, and disclosed to Plaintiff via certified letter on May 27, 2017, and signed by Marc Connelly.

126.

127. 3.3 As a result of her exposure to PFC's in the contaminated water supply, she has

128. experienced bioaccumulation of PFOS and PFOA in his blood which carries a

129. heightened risk of developing several health conditions, including but not limited to

130. effects on the liver and immune system, high cholesterol levels, changes in thyroid

131. hormone, hypertension, ulcerative colitis, fertility issues, testicular cancer, and

132. kidney cancer.

133. 3.137 The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally.

134. 3.138 Upon information and belief, each of the Defendants are responsible, negligently, intentionally and/or in some actionable manner, for the events and happenings referred to herein, and caused and continue to cause injuries and

135. damages legally thereby to Plaintiffs, as alleged, either through each Defendant's

136. own conduct or through the conduct of their agents, servants or employees, or due

137. to the ownership, maintenance or control of the instrumentality causing them injury,

138. 3.139 Defendants: THE UNITED STATES OF AMERICA,  The United States Air Force acting by and through its Secretary and or is her authorized delegates Fairchild Air Force Base Mark Connelly gs-12 21 DAC AFCEa remedial project manager, The Washington Department of Ecology, The US EPA, conducting business in Washington.

139.

140. 3M designed, manufactured and sold AFFF used for training and to fight

fires at numerous military bases and other

141.  locations throughout the country, including Fairchild Air Force Base.

142.  3.140 Defendant The United States Air Force under regulation by other named defendants purchased AFFF from the following companies: 3M, an American multinational corporation based in Maplewood, Minnesota. 3M was founded in 1902 as the Minnesota Mining and Manufacturing Company. With approximately $30 billion in annual net sales, 3M employs approximately 90,000 people, operates in approximately 70 countries, an produces more than 55,000 products.

143.  3.141 3M is engaged in substantial and not isolated activity in this state; all

144.  as more fully alleged herein.

145.  3.142 TYCO FIRE PRODUCTS L.P., successor in interest to

146.  THE ANSUL COMPANY (hereinafter "Tyco") is a Delaware corporation having a principal place of business at One Stanton Street, Marinette, Wisconsin 54143. Tyco manufactured and manufactures the Ansul brand of products, including Ansul brand AFFF.

147.  3.143 Upon information and belief, Defendant Tyco is the successor in

148.  interest to the corporation formerly known as the Ansul Company ("Ansul").

149.  Hereinafter, Ansul and/or Tyco as the successor in interest to Ansul will be referred to collectively as "Tyco/Ansul." At all times relevant, Tyco/Ansul designed, manufactured and sold AFFF used for training and to fight fires at numerous military bases and other locations throughout the country, including Fairchild Air Force Base.

150.  3.144 Defendant Buckeye Fire Equipment Company ("Buckeye") is a North

151.  Carolina corporation with its principal place of business at 110 Kings Road,

152.  Mountain, North Carolina 28086.

153.  3.145 At all times relevant to the present litigation, Buckeye designed,

154.  manufactured and sold AFFF used for training and to fight fires at numerous military bases and other locations throughout the country, including Fairchild Air Force Base.

155.  3.146 Chemguard Inc. is a Wisconsin corporation having its

156.  principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

157.    3.147 At all times relevant to the present litigation, Chemguard designed,
158.    manufactured and sold AFFF used for training and to fight fires at numerous
        military bases and other locations throughout the country, including
        Fairchild Air Force Base.
159.    3.148 NATIONAL FOAM, INC. is a Delaware corporation, having a
160.    principal place of business at 350 East Union Street, West Chester,
        Pennsylvania
161.    19382. At all times relevant, National Foam designed, manufactured and
        sold AFFF used for training and to fight fires at numerous military bases and
        other locations throughout the country, including Fairchild Air Force Base.
162.    3.149 At all times relevant to the present litigation, NATIONAL FOAM
163.    designed, manufactured and sold AFFF used for training and to fight fires at
164.    numerous military bases and other locations throughout the country,
        including
165.    Fairchild Air Force Base.
**166.    IV. FACTUAL ALLEGATIONS AS TO ALL COUNTS**
167.    4.1 AFFF formulations are chemical mixtures used to extinguish
168.    hydrocarbon fuel-based fires.
169.    4.2 AFFF containing fluorinated surfactants have a better firefighting
170.    capability than plain water due to their surface-tension lowering properties-
171.    essentially smothering the fire and starving it of its oxygen.
172.    4.3 However, some fluorinated surfactants have unique properties that
173.    cause some of the compounds to not biodegrade and to bioaccumulate, and
        are toxicto animals and humans.
174.    4.4 AFFF is a Class-B firefighting foam. It is mixed with water and used to
175.    extinguish fires that are difficult to fight, particularly those that involve
        petroleum
176.    or other flammable liquids.
177.    4.5 AFFF was introduced commercially in the mid-1960s and rapidly
178.    became the primary firefighting foam in the U.S. and in many parts of the
        world.
179.    4.6 AFFF is synthetically formed by combining fluorine free hydrocarbon
180.    foaming agents with surfactants. When mixed with water, the resulting

solution

181. produces an aqueous film that spreads across the surface of hydrocarbon fuel. This

182. film provides fire extinguishment and is the source of the designation aqueous film

183. forming foam.

184. 4.7 3M, Tyco/Ansul, National Foam, Chemguard and Buckeye

185. designed, manufactured, and sold AFFF that was used at Fairchild Air Force Base.

186. 4.8 Fluorosurfactants used in 3M's AFFF were produced by a unique and

187. patented process known as electrochemical fluorination ("ECF"). The ECF process

188. resulted in a product that contains PFOS, some of which degrades into PFOA.

189. 4.9 3M was the only company to manufacture PFOS-containing AFFF.

190. 4.10 In an attempt to limit liability, 3M opted to stop producing PFOS 2002

191. because it was aware of the looming chemical exposure and health effects on the

192. public.

193. 4.11 Similarly, PFOA is a man-made, manufactured chemical not found in

194. nature. PFOA was used to make household and commercial products that resist heat and chemical reactions, and has many uses, including repelling oil, stains, grease, and water.

195. 4.12 In 1947, 3M began producing PFOA via ECF.

196. 4.13 In 1951, 3M began selling its PFOA to other chemical companies,

197. including DuPont.

198. 4.14 Other companies, such as Defendants Tyco/Ansul, Buckeye, National

199. Foam, and Chemguard began manufacturing AFFF using PFOA that they produced

200. themselves or purchased from other companies. Defendants' AFFF was then sold to the USAF for use at fire departments and industrial facilities across the nation,

201. including Fairchild AFB.

202.   4.15 The chemical structure of PFOA and PFOS makes them resistant to
203.   breakdown or environmental degradation. As a result, they are persistent when
204.   released into the environment. Some PFC's, such as PFOS and PFOA, have been
205.   found to bioaccumulate in humans and animals. In 2005, the U.S. Department of
206.   Health and Human Services found that "human exposure to PFOA and PFOS lead
207.   to the buildup of these chemicals in the body."
208.   4.16 As early as the 1960s, 3M knew that PFOS and PFOA were stable,
209.   persistent in the environment, and do not degrade.
210.   4.17 Early studies showed that PFC's accumulated in the human body and
211.   were "toxic." 3M studies from the 1970s concluded that PFC's were "even more
212.   toxic" than previously believed.
213.   4.18 Upon information and belief, by the 1970's, 3M knew that its PFC's
214.   (PFOA and PFOS) were widely present in the blood of the general U.S. population.
215.   Upon information and belief, 3M concealed this knowledge from the public and
216.   government regulators.
217.   4.19 In or about 1977, Tyco/Ansul was also aware of the environmental and
218.   toxic concerns of its AFFF and undertook a study and investigation on more
219.   environmentally improved AFFF.
220.   4.20 FOA is readily absorbed after consumption or inhalation, and it
221.   accumulates primarily in the blood stream, kidney, and liver.
222.   4.21 Because of its toxicity, eight major PFOA manufacturers agreed in
223.   2006 to participate in the U.S. Environmental Protection Agency's ("EPA") PFOA
224.   Stewardship Program. The participating companies made voluntary commitments to reduce product content and facility emissions of PFOA and related chemicals by

225.  95%, no later than 2010.

226.  4.22 PFOA can remain in the environment, particularly in water, for many

227.  years and can move through air, soil, and into groundwater.

228.  4.23 Human studies show associations between increased PFOA levels in

229.  blood and an increased risk of several health conditions, including high cholesterol

230.  levels, changes in thyroid hormone, ulcerative colitis (autoimmune disease), pre-

231.  eclampsia (a complication of pregnancy that includes high blood pressure), and

232.  kidney and testicular cancer.

233.  4.24 These injuries can arise months or years after exposure to PFOA.

234.  4.25 PFOA's extreme persistence in the environment, along with its

235.  toxicity, mobility, and bioaccumulation potential, pose probable adverse effects to

236.  human health and the environment.

237.  **AFFF USAGE AT FAIRCHILD AIR FORCE BASE**

238.  4.26 Upon information and belief, Defendants used and supervised the use AFFF

239.  containing PFC's for sold to the Department of Defense or the US Air Force with

240.  knowledge that it would be used in training and emergency fire-fighting situations.

241.  4.27 Upon information and belief, Defendants used AFFF products at the Fairchild Air Force Base.

242.  4.28 At any given time, Fairchild AFB stored and used thousands of gallons

243.  of AFFF concentrate, designed, manufactured and sold by each of the Defendants.

244.  4.29 The AFFF was expected to, and did, reach Fairchild AFB without

245.  substantial change in the condition in which it was sold to the USAF.

246.  4.30 For decades, USAF personnel conducted training exercises at Fairchild

247.  AFB including firefighting training that used AFFF designed, manufactured and sold by 3M and other manufacturers..

248.  4.31 AFFF was released into the environment, air, soil and groundwater at
249.  locations including but not limited to the Fire Training Area ("FT-1"). 5
250.  4.32 AFFF was additionally introduced into the environmental and
251.  groundwater via aircraft hangers containing fire suppressions systems
      utilizing
252.  AFFF. During function testing or false alarms, AFFF was permitted by
      Fairchild AFB to enter the air, soil, and groundwater and further contaminate
      Plaintiffs' drinking water and blood.
253.
254.  *Fairchild Air Force Base Washington. Fairchild AFB Washington
      Administrative Record File Number 1307. Jan. 1996.*
255.
256.  4.33 Fairchild AFB conducted fire-extinguishing exercises at FT-1 from
      1970 to 1991 using foam that contained and released AFFF into the soil, air,
      and groundwater.6
257.  4.34 As a direct and proximate result of the USAF Fairchild failure to
      properly follow 3M and USAF instructions and Military standards for
      effluent discharge, or fulfill its obligations to exercise its duty of care as
      known toxins should never have been allowed to enter the groundwater,
      knowing the extreme risk associated with such contamination, as disclosed
      by studies provided to the defendants through various sources, long before
      the contamination was finally disclosed to the plaintiffs and the surrounding
      communities negatively affected by these defendant's negligent actions.
258.  Furthermore, the defendant Marc Connally's accepted refusal by all
      defendants to conform to CERCLA requirements for testing for
      contaminants in 2005 further verifies their liability through negligence,
      whether malicious in nature, intentional, or not, because there is a high
      probability that the plaintiff would not have been contaminated at all had this
      requirement been met. In fact, the testing required by CERCLA should have
      been done in 2005, seven years prior to 2012, and 12 years prior to the
      eventual, and ultimately too late disclosure on 5-27-17 by the Fairchild AFB
      of PFOA and PFOS contamination of the plaintiff's well with levels of 1970
      ppt, and therefore plaintiff's contamination exposure to her body and blood

could have been avoided entirely had they prioritized their duty of care for the health and safety of the surrounding residents who should have been considered top priority, above the "financial savings of over 27 million dollars in requirements" achieved by Connally, the focal point inFairchild's 80+ ERP sites for Fairchild AFB, who received an Environmental achievement award from the Secretary of Defense in 2013. (Exhibit D)

259.
260.    4.35 Upon information and belief, instructions, warning labels and material safety data sheets that were provided with the AFFF by manufacturers to the Defendants, adequately provide safe handling instructions for proper disposal, as documented in various class action cases dismissed against 3M in federal courts,  and extensive documentation has been provided to defendants which describe the health and environmental hazards of AFFF, as well as their duty to dispose in manners which do not further pollute the groundwater, and subsequent land, property, drinking water, and bodies of neighboring citizens & community. Defendants knew or should have known that appropriate actions and/or inactions would result in the plaintiff's ultimate contamination.

261.
262.    4.36 An October 2017 USAF "Action Memorandum for a Time-Critical Removal Action Treatment of PFOS- and PFOA- Contaminated Water In
263.    Residential Wells Near Fairchild Air Force Base, Washington," confirmed the use
264.    of AFFF at Fairchild AFB and that the fire training area on the base was the source
265.    of PFC contamination of the groundwater supply. 7
266.    6
267.    *Id.*
268.    7
269.    *U.S.A.F Air Force Engineering Center, Fairchild Air Force Base, Washington. Action Memorandum for a Time-Critical Removal Action Treatment of PFOS- and PFOA- Contaminated Water In Residential Wells Near Fairchild Air Force Base, Washington. Oct 2017.*

270.    **V. ALLEGATIONS**
271.    5.1 Plaintiffs incorporate the forgoing paragraphs as though the same were

272.   set forth at length herein.

273.   5.2 Plaintiffs bring this action on their own behalf and on under rhe Federal Tort Claims ACT 28, U.S.C.ss 1346(b)(1), 2671-2680(a) alleging negligence and negligence per se relating to the contamination of their water well. Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure, subject to amendment and additional discovery as follows:

274.   a. Seeks compensation for and Medical Monitoring as an Individual who consumed water from their domestic water supply wells in the Areas of Investigation.

275.   b. Seeks Property Damage compensation as an individual who own real property in the Areas of Investigation serviced by a private water well.

276.   5.5 Plaintiffs reserve the right to amend the Complaint for damages resulting from further investigation revealing additional contaminants or effects resulting from such damages not yet discovered or disclosed to the plaintiff, resulting from the defendant's actions or inactions in violation of the plaintiff's constitutional rights.

**277.   Typicality**

278.   5.8 Pursuant to Federal Rules of Civil Procedure 23(a)(3), Plaintiffs' claims arise from the negligent course of conduct by Defendants. Plaintiffs' persons and real property, have been damaged by Defendants' misconduct in that they have incurred damages and losses related to the introduction of PFOA, PFOS, and other PFC's into the water supplies in the Areas of Investigation, causing personal injury and property damages.

**279.   Predominance of Common Issues**

280.   5.13 There are numerous questions of law and fact in Plaintiffs claim:

281.   a. Whether Defendants engaged in the conduct alleged herein.

282.   b. Whether Defendants knew or should have known that exposure to PFOA and PFOS could increase health risks.

283.   c. Whether Defendants knew or should have known that allowing AFFF containing PFOA and PFOS to flow into the groundwater via effluent wastewaters was unreasonably dangerous to neighboring properties' owners and their potable water supply .

284.   d. Whether Defendants knew or should have known that their AFFF

contained persistent, stable, and mobile chemicals that were likely to contaminate groundwater water supplies.

285.    e. Whether Manufacturers supplying Defendants with AFFF failed to sufficiently warn of the potential for harm that resulted from use or misuse of their products.

286.    f. Whether Defendants became aware of health and environmental harm caused by PFOA and PFOS and failed to warn and/or protect Plaintiffs.

287.    g. The extent to which Defendants knew about the PFOA and PFOS

288.    contamination in the water in the Areas of Investigation.

289.    h. The extent to which Defendants knew about the PFOA and PFOS

290.    contamination in the water supply systems in the Areas of Investigation.

291.    i. The extent to which Defendants knew about the PFOA and PFOS

292.    contamination in the water supplied to private wells of residents in the Areas of

293.    Investigation.

294.    j. Whether the Defendants owed a duty to the Plaintiffs to refrain from the actions that caused the contamination of the drinking water with PFOA and PFOS.

295.    k. Whether Defendants made unlawful and misleading representations or material omissions with respect to the health impacts of PFOA and PFOS.

296.    l. For Medical Monitoring, whether Plaintiffs were exposed to water containing elevated levels of PFOA and PFOS while living in Medical Lake.

297.    m. For the Property Damage, whether the PFOA and PFOS contamination caused and continues to cause:

298.    (1) A continuous invasion of the property rights of the Plaintiffs such that the property values within the Areas of Investigation have and/or continue to decline in value following the disclosure of the PFOA contamination; and

299.    (2) Have substantially interfered with Plaintiffs' and the use and enjoyment of their property.

300.    n. Whether Plaintiffs are entitled to damages and other monetary relief and other equitable relief, including but not limited to punitive damages, and if so, in what amount.

301.    o. Whether the Plaintiff sustained damages and the proper measure of

damages.

302.    p. Whether Defendants are strictly liable to Plaintiffs for their actions.

303.    q. Whether Defendants are liable to Plaintiffs.

304.

**305.    AFFF CONTAINING PFOA AND PFOS IS FUNGIBLE AND COMMINGLED IN THE GROUNDWATER**

306.    5.15 AFFF containing PFOA and/or PFOS, once it has been released to the
307.    environment, lacks characteristics that would enable identification of the
        company
308.    that manufactured that particular batch of AFFF.

309.    5.16 The process of manufacture and distribution of AFFF, including that
310.    which contains PFOA and/or PFOS, includes complex arrangements
        whereby
311.    Defendants sell product for delivery through the Department of Defense, the
        USAF, specific installations, and/or third-party logistic intermediaries
        throughout the country, including to Fairchild AFB.

312.    5.17 A subsurface plume, even if it comes from a single location, such as a
313.    retention pond or fire training area, originates from mixed batches of AFFF
        coming
314.    from different manufacturers.

315.    5.18 The case here at Fairchild AFB is typical: even though several areas
316.    were located at the base where the AFFF was used and entered the
        groundwater,
317.    neither the federal or state investigators could determine the identity of the
318.    manufacturers whose AFFF containing PFOA and PFOS contributed to the
        resultin groundwater contamination plume.

319.    5.19 Because precise identification of the specific manufacture of any given
320.    water well, or the groundwater, is impractical for Plaintiffs to pursue the
        manufacturers instead of the Defendants, jointly and severally, for those
        indivisible injuries which Defendants have collectively visited upon
        Plaintiffs.

321.    5.20 Defendants are also jointly and severally liable because they conspired
322.    to conceal the true toxic hazards and nature of PFOS and PFOA

contamination from the public, to profit (or avoid massive expenses associated with remediation) from the use of AFFF containing PFOA and PFOS, at Plaintiffs' and the unfortunate public and private expense, and continued to recklessly contaminate Plaintiffs' property via groundwater infiltrating their well water supply, and to attempt to avoid liability for years for such contamination of the groundwater and poisoning of the Plaintiffs.

323.    **SHARE LIABILITY, ALTERNATIVE LIABILITY, CONCERT OF ACTION, ENTERPRISE LIABILITY**

324.    5.21 While The US Air Force personnel might claim immunity from liability for negligence, Defendants in this action are in fact liable and not immune because 1) but for the defendants' contributarily negligent actions, the plaintiff would not have suffered contamination, and 2) the descretionary function exception does not apply because Connally made decisions NOT to adhere to remedial agreements, ultimately resulting in the plaintiff's contamination, and the EPA commented, but did not intercede.  The Fairchild AFB was end product users that control a substantial share of the lability of contamination through use of AFFF-containing PFOA and/or PFOS in the United States and the defendants are jointly responsible for the ultimate and continued contamination of the groundwater in the Communities and for causing the damages and injuries complained of in this Complaint. Market share liability attaches to all Defendants and the liability of each should be assigned according to its percentage of the market for AFFF-containing PFOA and/or PFOS at issue in this Complaint. PFOA and PFOS is fungible; it is

325.    impossible to identify the exact Defendant who manufactured any given batch of

326.    AFFF containing PFOA and/or PFOS found free in the air, soil or groundwater, and each of these Defendants participated in a joint remedial action plan Implemented at 28 installation restoration program parentheses IRP sights at Fairchild Air Force Base AFB Washington the USAF has conducted this review pursuant to the comprehensive environmental response compensation and liability act cerl CLA 42 us code 9621 C National contingency plan NCP 40 code of federal regulations CFR 300 400

F4 II executive order 12580 January 23rd 1987 and federal facility agreement FFA for Fairchild Air Force Base March 1990. effort affirmed by USAF to comply with CERCLA requirements regarding the Priority 1, 2, and 3 contamination sites clearly identified in the EPA's Comprehensive Five Year Review Guidance (2001) of Final 2nd Five Year Review by USAF AFFF containing PFOA and/or PFOS during the relevant time.

327.  5.22 Concert of action liability attaches to all Defendants, each of which

328.  participated in a common plan to commit the torts alleged herein and each of which

329.  acted tortuously in pursuance of the common plan to knowingly conceal the toxic nature from their victims and use inherently dangerous AFFF-containing PFOA and/or PFOS, with little or no regard to their duty of care.

330.  5.23 Negligence liability attaches to all of the named Defendants for neglecting their duty to inform and protect the Plaintiff from harm, and for failing to comply with mandated directives in use, testing, and remediation in a timely and responsible manner, and ultimately causing the known toxins to contaminate the Plaintiff's land and body through the groundwater to well water contamination, whereby if they had not allowed the groundwater to become contaminated, and had not failed to warn the Plaintiff, and had tested the well water in 2001, 2005, 2008, and 2012, as required in said agreement, Plaintiff would have been spared the burden of contamination in their well water and their blood serum, by not drinking the water contaminated by the defendant's actions and or inactions.

331.

**332.  CONSPIRACY**

333.  5.24 Defendants actually knew of the health and environmental hazards

334.  which PFOA and PFOS posed to Plaintiffs.

335.  5.25 Beginning in the over 60 years ago, and continuing through the date of this

336.  Complaint, Defendants formed joint task forces and committees and otherwise

337.  colluded for the avowed purpose of providing information about known

contaminants such as AFFF-containing PFOA and/or PFOS to the public and to other government agencies, but with the true, unlawful purpose of deprivation of such knowledge to the citizens they are in charge of protecting.

338. b. Concealing the environmental properties and toxic nature of

339. PFOA and PFOS, and its impact on Plaintiffs and the environment; and

340. c. Maximizing profits in a way Defendants knew would require

341. them to contaminate allow continued contamination of the Plaintiffs' well water and poison their bodies (see EXHIBIT    Connally's Environmental Award for Saving 27 million dollars in 2013).

342. 5.26 Defendants carried out their conspiracy by one or more of the following

343. overt acts or omissions:

344. a. Intentionally misrepresenting to the public and USAF officials that the surrounding wells were not contaminated by toxins such as AFFF-containing PFOA and/or PFOS and was safe and did not pose an environmental or human health risk;

345. b. Concealing the dangers of PFOA and PFOS (including toxicological information on the dangers of the chemicals to living organisms, adverse fate and transport characteristics and the propensity of PFOA and PFOS to contaminate groundwater) from the government and the public by, among other means, repeatedly requesting that information about the dangers and health effects of PFOA and PFOS be suppressed and not otherwise published and by downplaying any adverse findings relating to PFOA and PFOS; (EXHIBIT    Final 2nd Five year review and letters denying duty to test wells for toxins, waivers sought for testing requirements for contaminated wells, 2008).

346. c. Concealing the dangers  by not properly notifying the Plaintiffs (whether negligently or NOT, but failing to exercise duty of care) of the potential contamination of their well water, as itemised and mandated in the agreement reached by all Defendants in 2007, (exhibit E: table 1-1,) presenting evidence that   the sites contaminated with AFFF-containing PFOA and/or PFOS were designated as "On-Base Priority One Sites" with "Remedial Action" (RA) required at the time the ROA was signed by them,

requiring RA for both sol and water. Their own directives in a realistic and timely manner, given the toxic and potentially life threatening effects of contamination known for YEARS to all defendants as exemplified in other lawsuits to which they have been parties to. from EVERYONE, including the private citizens immediately surrounding the Fairchild Air Force Base, Air Force personnel, private and/or enlisted, end users, sensitive receptors, public water suppliers, and the Plaintiffs, as mandated by law and CERCLA. This includes consumers of water potentially contaminated by groundwater through years of effluent discharge, and other activities in and around Fairchid AFB;

347.  d. Failing to using their consideration resources such as the Fairchild AFB Restoration Advisory Board established "in 1994 to provide an information exchange between the community ad the base," , and "led by the Installation and the CommunityCo-chairs" which reviews all documents and restoration efforts,  to prevent PFOA and PFOS exposure to Plaintiffs;

348.  E. Allowing Plaintiffs property's well and blood to become contaminated through failures to test and disclose in accordance with CERCLA mandates, and in violation regulations of Clean Water Act, the comprehensive environmental response compensation and liability Act, 42 United States code 9221 C, the National Contingency Plan (NCT) 40,  Code of Federal Regulations (CFR) 300-400 f4 iii, Executive Order 12580, January 23rd, 1987, and the Federal Facility Agreement for Fairchild Air Force Base March 1990, as well as well as the plaintiff's rights guaranteed by the US Constitution, and many other statutes to be identified by the plaintiff..

349.  5.27 As a direct and proximate result of the Defendants' above described

350.  conspiracy, PFOA and PFOS, at all times relevant to this litigation has:

351.  a. Posed and continues to pose a health threat to Plaintiffs because it has bioaccumulated in their bodies;

352.  b. Will require testing and monitoring of Plaintiffs' health for

353.  known adverse health effects of PFOA and PFOS;

354.  c. Contaminated Plaintiffs' property, soil and groundwater, and/or private water well;

355.  d. Will require remediation of PFOA and PFOS contaminated

356.     groundwater, or, where remediation of the groundwater is impractical, and installation of a system to filter out PFOA and PFOS is impractical, procurement of water from alternative sources( ie the City of Spokane); and

357.     e. Diminished, and will continue to diminish the values of Plaintiffs

358.     properties due to past, actual, impending or threatened contamination.

359.

**360.**     **VI. CAUSES OF ACTION INDIVIDUAL CLAIMS**

**361.**     **A. First Cause of Action: Negligence**

362.     6.1 Plaintiffs hereby repeat, reallege, and reiterate each and every

363.     allegation in the preceding paragraphs as if fully restated herein.

364.     6.2 This cause of action is brought pursuant to Washington State statutory

365.     and common law, to include but not limited to Chapter 4.22 RCW.

366.     6.3 Defendants knew or should have known that exposure to PFOA and

367.     PFOS was hazardous to the environment and to human health.

368.     6.4 Defendants knew or should have known that the manner in which they

369.     were manufacturing, marketing, and selling AFFF, containing PFC's, was hazardous

370.     to human health, bioaccumulated in the blood, and caused serious health effects,

371.     including cancer.

372.     6.5 Defendants also knew or should have known that PFC's are highly

373.     soluble in water, highly mobile, extremely persistent in the environment, and high

374.     likely to contaminate water supplies if released into the environment.

375.     6.6 Defendants knew or should have known that the manner in which they

376.     were using AFFF containing PFC's would result in

377.     the contamination of the municipal and private well drinking supplies of Airway

378.     Heights and Medical Lake, as a result of these communities' proximity to Fairchild

379.     AFB, of which the plaintiff is a member.

380.     6.7 Defendants owed a duty to Plaintiffs to act reasonably and not place

381.     inherently dangerous AFFF into the groundwater when its release into the

drinking
382. water supplies was imminent and certain.
383. 6.8 Defendants used and allowed use of AFFF products with knowledge that
384. AFFF containing large quantities of toxic PFC's would be used in training exercises and in emergency situations at military bases, including Fairchild AFB, in such a manner that dangerous chemicals would be released into the environment.
385. 6.9 Further, Defendants used and allowed use of AFFF products with knowledge
386. that AFFF containing large quantities of toxic PFC's would be stored in fire
387. suppressant systems and tanks on USAF Bases and that such systems and storage
388. were used and maintained in such a manner that dangerous chemicals would be
389. released into the environment.
390. 6.10 Knowing of the dangerous and hazardous properties of AFFF, and the
391. manner in which AFFF would be used, stored, and maintained at Fairchild AFB, it
392. was foreseeable that AFFF would contaminate the surrounding environment,
393. groundwater, and drinking water supplies of Airway Heights and Medical Lake, as
394. a result of these communities' proximity to Fairchild AFB.
395. 6.11 Defendants therefore knew or should have known that safety
396. precautions would be required to prevent the release of PFOA and PFOS into the
397. surrounding environment, groundwater, and drinking water supplies.
398. 6.12 The magnitude of the burden on the Defendants to guard against this
399. foreseeable harm to Plaintiffs was minimal, as the practical consequences of placing this burden on the Defendants amounted to a burden to
400. provide adequate alternative water supplies, proper handling, and sufficient warnings to the plaintiffs about the risks and probabilities of potential contamination of their well water contamination by AFFF products.
401. 6.13 As end users, Defendants were in the best position to provide

402. adequate instructions, and sufficient warnings about the contamination by AFFF

403. products.

404. 6.14 Considering the above factors related to risk, foreseeability, social

405. utility, burden of guarding against the harm, and the practical consequences of

406. placing that burden on the Defendants, the Defendants therefore owed a cognizable

407. duty to Plaintiffs not to contaminate their municipal and private well

408. drinking water supplies and the surrounding environment and groundwater with

409. AFFF, containing dangerous levels of PFC's.

410. 6.15 Defendants had a duty to warn of the hazards associated with AFFF,

411. containing PFC's, entering and poisoning the environment and groundwater.

412. 6.16 Defendants, as end users and US officials in charge of overseeing the remedial actions for contamination by AFFF owed Plaintiffs a cognizable duty to exercise reasonable care to ensure that AFFF was contained in such a way as to ensure that the neighboring citizens land and water were no longer contaminated and potentially affected by the end users of AFFF and were aware of the potential harm PFOA and PFOS can cause to human health and the environment.

413. 6.17 Upon learning of the release of the contaminants, all Defendants owed

414. Plaintiffs a duty to warn and notify Plaintiffs of the release of the contamination before it injured Plaintiffs and their property and/or to act reasonably to minimize the damage to Plaintiffs and their property.

415. 6.18 Defendants breached their duty by allowing PFOA and PFOS to be

416. released into the municipal and private well drinking water supplies of Airway

417. Heights and Medical Lake, and through their failure to warn and notify the end users of AFFF of the danger that PFOA and PFOS would enter into the environment and groundwater.

418. 6.19 As such, the Defendants, negligently, grossly negligently, recklessly,

419. willfully, wantonly, and/or intentionally breached their legal duties to the

Plaintiffs, causing the continued contamination of the municipal and private well drinking

420.  water supplies in and around the residences of Plaintiffs.

421.  6.20 Defendants further breached the duties owed to the Plaintiffs and the

422.  Class by failing to take reasonable, adequate, and sufficient steps or actions to

423.  eliminate, correct, or remedy any contamination after it occurred.

424.  6.21 Defendants' failure to notify the Plaintiffs in a timely

425.  manner of the contamination of the municipal and private well drinking water

426.  supplies, and, consequently, the presence of PFOA and PFOS in the real properties

427.  of Plaintiffs constitutes another breach of the duties that Defendants owed Plaintiffs.

428.  6.22 Defendants' breaches of their duties were direct and proximate causes

429.  of Plaintiffs' injuries, damages, and the imminent, substantial, and

430.  impending harm to their health and property.

431.  6.23 Defendants' breaches of their duties caused the drinking water in both

432.  the municipal and private well supplies to become contaminated with unsafe and

433.  dangerous levels of PFOA and PFOS.

434.  6.24 Further, Defendants' breach of their duty to timely notify the

435.  community and act reasonably in warning of the presence of PFOA and PFOS from AFFF in their water supplies, Plaintiffs and the Class were forestalled from undertaking effective and immediate remedial measures, and Plaintiffs have expended and/or will be forced to expend significant resources to test, monitor, and remediate the effects of Defendants' negligence for many years.

436.  6.25 Plaintiffs suffered foreseeable injuries and damages as a proximate result of said Defendants' negligent breach of their duties as set forth above. At the time Defendants breached their duties to Plaintiffs, Defendants' acts and/or failures to act posed recognizable and foreseeable possibilities of danger to Plaintiffs so apparent as to entitle them to be protected against such

actions or inactions.

437.    6.26 Accordingly, Plaintiffs seek damages from Defendants, in an amount to be determined at trial, directly resulting from their injuries to their

438.    persons and property, in a sufficient amount to compensate them for the injuries and losses sustained and to restore Plaintiffs and the Class to their original position,

439.    including but not limited to the difference between the current value of their

440.    property, loss of rents, loss of business income, and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injuries to persons, including the need for medical monitoring as an element of damages, and actual, consequential, and nominal damages, flowing from the negligence which are the natural and proximate result of Defendants conduct in an amount to be proved at trial.

**441.    B. Second Cause of Action: Medical Monitoring**

442.    6.27 Plaintiffs hereby repeat, reallege, and reiterate each and every

443.    allegation in the preceding paragraphs as if fully restated herein.

444.    6.28 This cause of action is brought pursuant to federal and Washington

445.    State statutory and common law.

446.    6.29 Medical monitoring is available to Plaintiffs  who have yet to sustain a present injury as a stand-alone cause of action as the increased risk of developing the diseases and conditions discussed supra constitute an injury-in-fact and also as an element of damages associated with Plaintiffs other claims for those Plaintiffs and Class Members who have sustained a present injury.

447.    6.30 A claim for medical monitoring requires (1) significant exposure to a

448.    proven hazardous substance through the negligent actions of defendant; (2) an

449.    increased risk of contracting a serious latent disease as a proximate result of

450.    exposure; (3) increased risk makes periodic diagnostic medical examinations

451.    reasonably necessary; and (4) monitoring and testing procedures exist which make

452.    the early detection and treatment of the disease possible and beneficial. See Durfey

453.   v. E.I. DuPont De Nemours & Co., 59 F.3d 121, 123 (9th Cir. 1995) citing In re

454.   Paoli R.R. Yard PCB Litig., 916 F.2d 829, 852 (3rd Cir. 1990); see also, Krottner v.

455.   Starbucks Corp., 628 F.3d 1139, 1142 (9th Cir. 2010).

456.   6.31 Defendants knew or should have known that the manner in which they

457.   were using AFFF containing PFC's would result in the contamination of the Plaintiffs private well drinking water and supplies of Airway Heights and Medical Lake, as a result of these communities' proximity to the Fairchild Air Force Base.

458.   6.32 Defendants knew or should have known that exposing humans to PFC-

459.   contaminated water would be hazardous to human health and the environment.

460.   6.33 The Plaintiffs have been exposed to PFOA, PFOS, and potentially other toxic substances that resulted from the use, storage, and discharge of AFFF at Fairchild AFB.

461.   6.34 As described more fully above in this Complaint, PFOA and PFOS

462.   exposure leads to the bioaccumulation of PFOA and PFOS in the blood, seriously

463.   increasing the risk of contracting numerous diseases. Medical tests currently exist

464.   that can determine the level of PFOA and PFOS in the blood.

465.   6.35 Given that exposure to and bioaccumulation of PFOA and PFOS

466.   significantly increases the risk of contracting a serious medical condition, periodic

467.   medical examinations to detect latent diseases are both reasonable and necessary. A

468.   thorough medical monitoring plan, by doctors of the plaintiffs choice, given doctors are claiming no knowledge of accepted medical practices to treat existing and future medical conditions associated with PFOA/ PFOS toxic contamination, can and should be paid for the Plaintiffs to assist in

469.   the early detection and beneficial treatment of the diseases that can develop as a

470.   result of exposure to PFOA and PFOS.

**471.    C. Third Cause of Action: negligence liability – Failure to Warn**

472.   6.36 Plaintiffs hereby repeat, reallege, and reiterate each and every

473.   allegation in the preceding paragraphs as if fully restated herein.

474.   6.37 This cause of action is brought pursuant to Washington State statutory

475.   and common law, to include but not limited to Chapter 7.72 RCW.

476.   6.38 Defendants knew or should have known that exposure to PFOA and

477.   PFOS was hazardous to the environment and to human health.

478.   6.39 Defendants knew or should have known that the manner in which they

479.   were using and disposing of AFFF, containing PFC's, was hazardous

480.   to human health and the environment.

481.   6.40 Defendants knew or should have known that the manner in which they

482.   were and had been using AFFF containing PFC's would result in

483.   the contamination of the municipal and private water supply as a result of its

484.   proximity to Fairchild AFB.

485.   6.41 Defendants had the duty to warn of the hazards associated with AFFF

486.   entering and poisoning the environment and groundwater because they knew of the

487.   dangerous, hazardous and toxic properties of the AFFF.

488.   6.42 Defendants failed to provide sufficient warning that the use and storage

489.   of Defendants' product would cause the product to be released into the environment and cause the contamination of the environment, groundwater, and drinking water, with PFOA and PFOS.

490.   6.43 Further, this contamination led to the exposure and bioaccumulation of

491.   PFOA and PFOS of the Plaintiffs and increased their risk of developing

492.   numerous diseases as more fully set forth above.

493.   6.44 Following Adequate instructions and warnings by manufacturers of the AFFF products to end users and EPA were provided as far back as 2000, and could have

494.   reduced or avoided these foreseeable risks of harm to Plaintiffs and

495.   their property, and bodies, had they been followed by defendants.

496.   6.45 Had Defendants provided adequate warnings, Plaintiffs

497.   could have taken measures to avoid or lessen their exposure.

498.    6.46 Had Defendants provided adequate warnings to the end users, steps

499.    could have been taken to reduce or prevent the release of PFOA and PFOS into the

500.    environment, groundwater, and drinking water.

501.    6.47 Defendants' failure to warn was a direct and proximate cause of the

502.    environmental and health impacts from PFOA and PFOS that came from the use,

503.    storage and disposal of AFFF at Fairchild AFB.

504.    6.48 As such, Defendants' failure to provide adequate and sufficient

505.    warnings for the AFFF that they used and disposed of renders them negligent in their duties to protect the citizens from harm.

506.    6.49 As a result of Defendants' conduct and the resulting contamination, the

507.    value and marketability of the property of the Plaintiffs'

508.    has been and will continue to be diminished. Plaintiffs have suffered

509.    the need for and the cost of remediation of their property and or mitigation systems for the property, and the cost of alterative water.

510.    6.50 As a result of the contamination, Plaintiffs have lost use

511.    and enjoyment of their properties and have suffered annoyance and discomfort,

512.    inconvenience and annoyance as a consequence of the contamination of their

513.    property by Defendants.

**514.    D: Fourth Cause of Action- Strict Liability**

515.    6.51 As a result of Defendants' conduct and the resulting contamination, the

516.    Plaintiffs have been injured in that their exposure to PFOS, PFOA,

517.    and potentially other toxic substances has caused them to develop illnesses

518.    associated with this exposure as more fully described and/or significantly increased

519.    their risk of developing those illnesses.

520.    6.52 As a result of Defendants' Fairchild AFB use of the AFFF product for decades in such as its contamination of Fairchild AFB's neighboring water supplies and blood through exposure and ingestion of contaminants, Defendants are strictly liable in damages to the Plaintiffs .

521.    6.53 Furthermore, Defendants' acts were willful, wanton, reckless and/or

conducted with a reckless indifference to the rights of Plaintiffs and Class Members.

522.    **E. Fifth Cause of Action: Private Nuisance**

523.    6.71 Plaintiffs hereby repeat, reallege, and reiterate each and

524.    every allegation in the preceding paragraphs as if fully restated herein.

525.    6.72 This cause of action is brought pursuant to the laws of Washington State

526.    statutory and common law, to include but not limited to Chapter 7.48 RCW.

527.    6.73 Plaintiffs as described above, are

528.    owners of real property with the right of possession.

529.    6.74 To be actionable a nuisance "must either injure the property or

530.    unreasonably interfere with enjoyment of the property" or as otherwise specifically

531.    provided for by statute. Tiegs v. Watts, 135 Wash. 2d 1, 13, 954 P.2d 877, 883–84

532.    (1998)

533.    6.75 At all times relevant to the present cause of action, Defendants

534.    Used the AFFF  at Fairchild AFB that resulted in the contamination of the water supply relied upon by Plaintiffs and at all relevant times.

535.    6.76 At the time the above-described, affirmative, voluntary, and intentional

536.    acts were performed by Defendants, Defendants had good reason to know or expect that large quantities of PFOA and PFOS would and/or could be introduced into the properties of Plaintiffs.

537.    6.77 The above-described affirmative, voluntary, and intentional acts were

538.    performed with the reckless disregard of the potential for PFOA and PFOS to be

539.    disbursed through the water and onto the land and property of Plaintiffs and the

540.    Property Damage Class.

541.    6.78 Defendants' negligent, reckless, willful, and/or wanton actions and/or

542.    intentional failures to act caused an unknown quantity of PFOA and PFOS to be

543.    Released and continued to allow contamination of the drinking water for

residential areas near Fairchild Air Force Base for years after it became known to defendants, who willfully disregarded regulations intended for public protection of the toxins.

544. 6.79 The introduction of unknown quantities of PFOA and PFOS onto the
545. property of the Plaintiffs unreasonably interfered with
546. the use and enjoyment of their property.
547. 6.80 The potential danger from the drinking water at their residences has
548. caused the Plaintiffs significant and unreasonable inconvenience and
549. expense.
550. 6.81 This constitutes a substantial interference with the use of the properties
551. such that it is offensive and has caused significant inconvenience or annoyance.
552. 6.82 Accordingly, seek damages from Defendants,
553. in an amount to be determined at trial, directly resulting from their injuries to their
554. persons and property, in a sufficient amount to compensate them for the injuries and losses sustained and to restore Plaintiffs and the Class to their original position,
555. including but not limited to the difference between the current value of their
556. properties and such value if the harm had not been done, the cost of repair or
557. restoration, the loss of rents and business income, the value of the use of the continuous nuisance, injuries to persons, including the need for medical monitoring as an element of damages, and actual, consequential, and nominal damages, flowing from the nuisance which are the natural and proximate result of Defendants' conduct in an amount to be proved at trial.
**558. VII. CLAIM FOR PUNITIVE DAMAGES**
559. 7.1 Plaintiffs and the Class hereby repeat, reallege, and reiterate each and
560. every allegation in the preceding as if fully restated herein.
561. 7.2 Upon information and belief, Defendants engaged in willful, wanton,
562. malicious, and or/reckless conduct that caused the foregoing property damage,
563. nuisances, and injuries upon the persons and properties of Plaintiffs,
564. disregarding their protected rights.

565.    7.3 Defendants' willful, wanton, malicious, and/or reckless conduct
566.    includes but is not limited to Defendants' failure to take all reasonable measures to
567.    ensure PFOA and PFOS, which they knew to be carcinogenic, was not ingested by
568.    Plaintiffs and the Class.
569.    7.4 Defendants have caused great harm to the property and water supplies
570.    of Plaintiffs and the Class and demonstrated an outrageous conscious disregard for
571.    their safety with implied malice, warranting the imposition of punitive damages.

**572.    VIII. PRAYER FOR RELIEF**

573.    WHEREFORE, the Plaintiffs and the Class demand judgment against
574.    Defendants, and each of them, jointly and severally, and request the following relief from the Court:
575.    8.1 A declaration that Defendants acted with negligence, gross negligence,
576.    and/or willful, wanton, and careless disregard for the health, safety, and property of
577.    Plaintiffs;
578.    8.2 An order requiring that Defendants pay for Remediation of the Plaintiff's well, or pay costs associated with connecting to the nearby municipal water supply and 27.5 years of he costs to supply water to the property for its full intended light industrial use, and planned use as a micro-brewing location;
579.    8.3 An order requiring the defendants to pay for all and any medical costs associated with their exposure to the contaminants, and an and all treatment of such by physicians and experts of the Plaintiff's choice.
580.    8.4 An award to Plaintiffs of general, compensatory, exemplary, consequential, nominal, and punitive damages;
581.    8.6 An order for an award of attorney fees and costs, as provided by law;
582.    8.7 Pre-judgment and post-judgment interest as provided by law; and
583.    8.8 An order for all such other relief the Court deems just and proper.

**584.    IX. JURY DEMAND**

585.    Plaintiffs demand a trial by jury of any and all issues in this matter so triable.

586.  DATED this 5th day of November, 2018.
587.
588.  B&B Investment Properties, LLC
589.  Beatrice Counts, mg mem.
590.  4503 s Craig Rd.,
591.  Medical Lake WA 99022
592.